IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| American Airlines, Inc., | § | |
| | § | |
| Petitioner, | § | |
| | § | Misc. Action No. |
| v. | § | |
| | § | |
| Kathy E. Emery, | § | |
| | § | |
| Respondent. | § | |

_____

| | | |
|---|---|---|
| Kathy E. Emery | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 14-80518 |
| | § | |
| v. | § | United States District Court |
| | § | for the Southern District of Florida |
| Allied Pilots Association, | § | |
| | § | |
| Defendant | § | |

**AMERICAN AIRLINES, INC.'S MOTION TO QUASH OR MODIFY
SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION AND REQUEST
FOR EXPEDITED CONSIDERATION AND BRIEF IN SUPPORT**

American Airlines, Inc. ("American") moves this Court for an order quashing or modifying a subpoena for deposition testimony (the "Subpoena") served on it by Defendant Kathy E. Emery ("Emery").[1]  Expedited consideration is requested because the Subpoena American seeks to quash requires an appearance before the normal briefing schedule would be complete.  American files with the motion an appendix with supporting declarations and evidence.

---

[1] The subpoena is directed to "American Airlines, Scott Hansen Director of Flight Administration," but it was served only on American. Scott Hansen was not served with the Subpoena.

On September 14, 2016, Emery served the Subpoena in a case to which American is not a party in the District Court for the Southern District of Florida (the "Florida Court"), captioned *Kathy E. Emery v. Allied Pilots Association*, Civil Action No. 9:14-cv-80518 (the "Litigation"). Through the Subpoena, Emery seeks to depose Scott Hansen, Director of Flight Administration at American, on September 29, 2016.  But Mr. Hansen is unavailable on that date due to a preexisting conflict that cannot be changed, and Emery has refused to reschedule the deposition for October 14, 2016, a date on which Mr. Hansen is available.

By her refusal to accommodate American's simple request to reschedule the deposition for a date on which Mr. Hansen is available, and insisting on his deposition when he is not available, Emery is placing an undue burden on a non-party that has been more than cooperative with her throughout the discovery process in the Litigation.  Accordingly, American moves to quash the Subpoena, or alternatively, to modify it to provide for Mr. Hansen's deposition on October 14, 2016.

## FACTUAL BACKGROUND

A.  The Litigation

On April 15, 2014, Emery filed a complaint against Allied Pilots Association ("APA"). (Litigation Docket No. 1.)  In October 2015, APA served Rule 26 initial disclosures on Emery naming Mr. Hansen as an individual who may have discoverable information relevant either to Emery's claims or APA's defenses, or both.  (Declaration of Sloane Ackerman ("Ackerman Decl.") ¶ 3, App. 2.)  During the discovery period in the Litigation, Emery did not seek to depose Mr. Hansen, but did serve a document subpoena on American.  (*Id.* ¶ 4, App. 2.)  In response, American cooperated and produced documents.  (*Id.*)

After the close of discovery in the Litigation on February 19, 2016, the case was re-assigned to a different judge. (Litigation Docket Nos. 56, 90.) The new judge re-opened discovery *sua sponte*, extending the discovery cutoff until October 17, 2016. (Litigation Docket No. 94.)

On July 29, 2016, Emery served a deposition subpoena on American (the "July Subpoena"), seeking to depose Mr. Hansen on August 19, 2016. (Ackerman Decl. ¶ 5, App. 2.) The July Subpoena also sought the production of documents at the deposition. (*Id.*) In accordance with Federal Rule 45(d)(2)(B), American served objections to the document requests on August 12, 2016. (*Id.*) American also agreed to produce Mr. Hansen for his deposition on August 19, 2016. (*Id.*)

On August 15, 2016, APA and Emery entered into an agreement settling the Litigation. (Litigation Docket No. 108.) On August 16, 2016, Emery informed American's counsel that Mr. Hansen's deposition was cancelled. (Ackerman Decl. ¶ 6, App. 2.) On August 22, 2016, however, Emery revoked the settlement of the Litigation. (Litigation Docket Nos. 110-111.)

Approximately three and a half weeks later, on September 14, 2016, Emery served the Subpoena on American, again seeking to depose Mr. Hansen—this time on September 29, 2016. (Ackerman Decl. ¶ 2, Ex. 1, App. 1.) The Subpoena also again sought the production of documents at the deposition. (*Id.*)

B.   Scheduling Conflicts

Mr. Hansen is unavailable for a deposition on September 29, 2016, and remains unavailable until the week of October 10, 2016. (Ackerman Decl. ¶ 7, App. 2.) This is due to his role in American's upcoming integration of its crew management systems—one of the most significant steps in American's merger with US Airways. (*Id.*)

Managing the schedules of the nearly 15,000 pilots employed by American, while ensuring that the pilots remain compliant with the Federal Aviation Regulations ("FARs") and the countless rules contained in their collective bargaining agreements ("CBAs"), is an extraordinarily complex undertaking. (Declaration of Scott Hansen ("Hansen Decl.") ¶ 2, App. 14.) To accomplish this task, American currently employs three "crew management systems" that are programmed with the FARs and collectively-bargained scheduling rules. (*Id.* ¶ 3, App. 14.) Two of those crew management systems were used by the legacy US Airways ("LUS") pilots prior its merger with American, and the third system, known as "FOS" (for Flight Operating System), was used by American. (*Id.*)

After years of planning, preparation, and programming, on October 1, 2016, at 12:01 a.m., American will transition the various LUS airline systems to American's FOS system. (*Id.* ¶ 4, App. 14.) This includes US Airways' flight movement, cargo systems, and technical operations (i.e., aircraft maintenance), as well as pilot scheduling and tracking. (*Id.*) Among other things, this means that on October 1, 2016, approximately 5,000 pilots will begin using a brand new operating system. (*Id.*) LUS pilots, for instance, will sign in for trips, view their schedules, and trade trips in a computer system that is entirely new to them. (*Id.*)

The magnitude of the transition cannot be overstated, and preparations for the transition to a single FOS system have been extensive. (*Id.* ¶ 5, App. 14.) For purposes of illustration, in October 2014, American's IT Department received funding for the integration in the amount of $254,000,000.00, and American has invested 154 man-years of training to prepare for the FOS transition and organized 228 different "go live" moments for over 500 related applications. (*Id.*) As an example, this project has taken eight to nine times as many hours to accomplish than the much publicized integration to American's single reservation system. (*Id.*)

Due to the magnitude of the integration, American expects that hundreds of employees, including Flight Management and Administrative Personnel, IT, and Crew Scheduling Departments will be stretched to capacity in the days and weeks surrounding October 1st. (*Id.* ¶ 6, App. 15.) As part of the transition, American has established an "Event Command Center" consisting of eight Subcommand Centers, five Issue Management Teams, and ten Operational Support Teams. (*Id.*) Each one of the teams has a "playbook," which lays out in excruciating detail every single step that must occur for the transition to succeed. (*Id.*)

Mr. Hansen has been designated as the Flight Administration Subcommand Level Lead. (*Id.* ¶ 7, App. 15.) In that role, he has responsibility and oversight of issues related to the transfer of pilot data to the new crew management system. (*Id.*) For instance, data related to the pilot seniority list, pilot records, and CASS (automated cockpit security system) are all within his area of responsibility. (*Id.*) He will have a very small window of time to address any issue that arises related to this enormous amount of data. (*Id.*) Based upon his playbook, for instance, flights will be cancelled if issues are not resolved within this small window of time. (*Id.*) As a result, Mr. Hansen's ability to fulfill his role as Subcommand Level Lead would be significantly compromised were he to be required to take time away from the many issues related to this cutover and attend a deposition. (*Id.*) Even if he were permitted to take telephone calls during that deposition, he would not be able to address and resolve issues in the instantaneous manner that this cutover will require. (*Id.*)

Mr. Hansen and members of the Flight Management and Administrative Personnel Departments play a critical role in accomplishing the transition and mitigating the potential disruption to the operation of the entire airline, and thus to the traveling public. (*Id.* ¶ 8, App. 15-16.) For that reason, even after the transition occurs on October 1st, Mr. Hansen will be

on call 24/7 for the first week following cutover to the new system and address any issues that arise. (*Id.*) It is expected that Mr. Hansen and his team will have numerous issues related to assisting LUS pilots on how to navigate the complexities of the system. (*Id.*) And American cannot be sure how the FOS system will respond to potential glitches. If these glitches occur, Mr. Hansen and others on his team must be available to immediately address them to assist in ensuring that American's operations are impacted as little as possible. (*Id.*)

Therefore, American requests that the Court quash the Subpoena or adjourn Mr. Hansen's deposition to October 14, 2016.[2]

## ARGUMENT

Rule 45 of the Federal Rules of Civil Procedure requires Emery to "take reasonable steps to avoid imposing undue burden or expense on" American, and this Court should "enforce this duty" by quashing or modifying the Subpoena. Fed. R. Civ. P. 45(d)(1), (3)(A)(iv).

Emery's refusal to reschedule Mr. Hansen's deposition from September 29 to October 14, 2016 places a tremendous burden on American—a non-party that has been completely cooperative in the discovery process in the Litigation. *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("the court may also consider the expense and inconvenience to the non-party").

This burden is unjustifiable given that American is making Mr. Hansen available before the Litigation's discovery cutoff and there is no burden on Emery. *See Dimitric v. Tx.*

---

[2] October 10, 2016 is Columbus Day, and American's counsel from O'Melveny & Myers LLP is unavailable that day as well as on October 11-12, 2016 due to a court hearing in New York and related preparation. (Ackerman Decl. ¶ 8, App. 2-3.) While both Mr. Hansen and counsel for American are available on October 13, 2016, a mediation has been scheduled in the Litigation at the Florida Court on that date, so the parties are not available. (*Id.*; Litigation Docket No. 116.) Counsel for APA is available to attend Mr. Hansen's deposition on October 14, 2016. (Ackerman Decl. ¶ 8, App. 3.)

*Workforce Comm'n*, No. 07-0247, 2008 U.S. Dist. LEXIS 49736, at *3 (S.D. Tex. June 30, 2008) ("Whether a subpoena imposes undue burden generally raises a question of the subpoena's reasonableness, which requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.") (citation and internal quotation marks omitted).

Emery has had months, if not years, to depose Mr. Hansen. Indeed, Emery has known that Mr. Hansen may have relevant information since he was disclosed by APA in October 2015. And even if Emery did not know that until more recently, she did not serve the Subpoena for nearly a month after revoking her settlement of the Litigation. Now, after her own delay, Emery is refusing to accommodate American's simple request to reschedule the deposition and demanding that Mr. Hansen, American's Flight Administration Subcommand Level Lead, prepare and appear for a deposition during two of the most critical weeks since American's merger with US Airways. The Subpoena is thus "unreasonable and oppressive" and should be quashed or modified. *See Wiwa*, 392 F.3d at 818; *HCAPS Conroe Affiliation Inc. v. Angelica Textile Servs. Inc.*, No. 15-60, 2015 U.S. Dist. LEXIS 80182, at *5 (N.D. Tex. June 22, 2015) (granting motion to quash).

## **CONCLUSION**

For the foregoing reasons, American respectfully requests that the Court quash the Subpoena or modify it to require Mr. Hansen to appear for a deposition on October 14, 2016.

                Respectfully submitted,

                */s/ Lars L. Berg*
                Lars L. Berg
                State Bar No. 00787072
                KELLY HART & HALLMAN LLP
                201 Main Street, Suite 2500
                Fort Worth, Texas 76102
                Phone: (817) 332-2500
                Fax: (817) 878-9280

                ATTORNEYS FOR PLAINTIFF
                AMERICAN AIRLINES, INC.

## CERTIFICATE OF CONFERENCE

The undersigned attorney for Petitioner American Airlines, Inc. ("American") certifies that this motion is opposed. I conferred with Respondent Kathy E. Emery during a telephone call on September 23, 2016, and agreement on this motion could not be reached. Emery will not agree to schedule Scott Hansen's deposition on October 14, 2016 or another date when he and counsel are available, and opposes this motion.

                */s/ Lars L. Berg*
                Lars L. Berg

## **CERTIFICATE OF SERVICE**

On September 23, 2016, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Lars L. Berg*
Lars L. Berg